# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES A. FIELDS, | ) |
| Petitioner, | ) |
| v. | ) Case No. 09-CV-0553-CVE-PJC |
| DAVID C. MILLER, Warden, | ) |
| Respondent. | ) |

### OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus proceeding. Petitioner is a state prisoner appearing pro se. Respondent filed a response to the petition (Dkt. # 10), and provided the state court record necessary for resolution of Petitioner's claims (Dkt. ## 10, 11, 12). Petitioner filed a reply (Dkt. # 16). For the reasons discussed below, the Court finds the petition shall be denied.

### *BACKGROUND*

On December 20, 2003, Tulsa Police Officers Jason White, Justin Demaree, and Jason Wheeler were conducting an undercover prostitution investigation at the Western Inn Motel, located at 5915 East 11th Street, in Tulsa, Oklahoma. The motel is well known for prostitution and drug trafficking. During the course of their investigation, Officers White and Demaree encountered Petitioner Charles A. Fields. Petitioner initiated contact with the officers by asking Officer White if he had jumper cables. Officer White asked Petitioner if he knew where they could find some "work" or "hard," street terms for crack cocaine. In response, Petitioner stated "I might know where I can get something along those lines," and led the officers to Room 121. Officer White followed Petitioner into the room, and motioned for Officer Demaree to follow. There were two other people in the room: a male, later identified as Earl Carter, and a female, later identified as Acamie Lawrence. Petitioner asked Carter if he knew the officers. Carter responded, "yeah, they're cool."

Petitioner proceeded to sell Officer White, in two separate transactions, a total of $60 worth of crack cocaine, along with $10 worth of Xanax. He obtained the cocaine from a larger rock stored on the lid of the toilet in the bathroom. Petitioner also gave the officers additional Xanax because they were "good customers." After the exchange of drugs for money, the officers identified themselves as police and took Petitioner into custody. They conducted a pat down search of Petitioner and recovered a cell phone and cash in the amount of $365, in addition to the $60 exchanged between Officer White and Petitioner. They also recovered additional crack cocaine from the bathroom of the motel room.

Based on those events, Petitioner was charged with Unlawful Delivery of a Controlled Drug (Count 1) and Unlawful Possession of a Controlled Drug With Intent to Distribute (Count 2), both After Former Conviction of Two or More Felonies ("AFCF"), in Tulsa County District Court, Case No. CF-2003-5983. On September 20, 2005, the trial judge sustained Petitioner's oral motion to merge Counts 1 and 2, and Count 2 was dismissed by the trial judge. Appearing pro se, Petitioner was tried by a jury on September 21-25, 2005. He was found guilty of Unlawful Delivery of a Controlled Drug, AFCF, and sentenced to 15 years to life imprisonment. Petitioner appealed. On March 28, 2007, the Oklahoma Court of Criminal Appeals ("OCCA") found that Petitioner had not knowingly and intelligently waived his right to counsel. For that reason, the case was reversed and remanded for a new trial. See Dkt. # 12, O.R. at 239-40.

Petitioner's second jury trial took place on September 4-6, 2007. He again appeared pro se and was aided by standby counsel Marny Hill. The record reflects that prior to trial, the prosecution offered ten (10) years imprisonment in exchange for a guilty plea. Petitioner rejected the plea offer. At the conclusion of the two-stage trial, Petitioner's jury again found him guilty of Unlawful

Distribution of a Controlled Drug, AFCF, and recommended a sentence of life imprisonment. On September 24, 2007, Petitioner was sentenced to life imprisonment in accordance with the jury's recommendation.

Petitioner appealed his conviction and sentence to the OCCA. Represented by attorney Thomas Purcell, Petitioner raised four (4) propositions of error on direct appeal:

> Proposition 1: Mr. Fields was deprived of his right to counsel under the Sixth Amendment of the United States Constitution, and Article II, Section 20 of the Oklahoma Constitution when he represented himself at trial without being warned of the dangers of self-representation.
>
> Proposition 2: Mr. Fields' life sentence was excessive and should be modified.
>
> Proposition 3: The trial judge committed fundamental error by failing to instruct the jury on entrapment.
>
> Proposition 4: The evidence against Mr. Fields was secured by an illegal search, and therefore it should have been excluded and the charges against Mr. Fields dismissed.

(Dkt. # 10, Ex. 1). In an unpublished summary opinion, filed September 23, 2008, in Case No. F-2007-986, the OCCA rejected Petitioner's claims and affirmed the Judgment and Sentence of the trial court (Dkt. # 10, Ex. 3).

Petitioner filed an application for post-conviction relief.[1] After being denied relief in the state district court, he appealed. By Order filed November 12, 2008, the OCCA dismissed the post-conviction appeal for lack of jurisdiction based on Petitioner's failure to provide a certified copy of

---

[1] Petitioner states that, in his application for post-conviction relief, he alleged that he had been "unconstitutionally compelled to self-representation," and that appellate counsel provided ineffective assistance in failing to raise that claim; that appellate counsel provided ineffective assistance in failing to present documentation supporting his claim that the police officers had forged documentation; and that trial counsel provided ineffective assistance in failing to obtain an evidentiary hearing. See Dkt. # 1 at 3-4.

3

the district court's order as required by the *Rules of the Oklahoma Court of Criminal Appeals*. See Dkt. # 10, Ex. 4. Petitioner filed a subsequent application for post-conviction relief. After being denied relief by the state district court, he appealed. By Order filed July 2, 2009, the OCCA affirmed the denial of the subsequent application for post-conviction relief, citing Okla. Stat. tit. 22, § 1086, and imposing a procedural bar on Petitioner's claims. See Dkt. # 10, Ex. 5.

Petitioner filed the instant habeas corpus petition on August 26, 2009 (Dkt. # 1). He has also filed "supplements" to his petition. See Dkt. ## 2, 17, 18. In his petition, Petitioner identifies the following grounds for relief:

> Ground 1: Defendant was compelled to self-representation due to "conflict of interest" and against his will and choice.
>
> Ground 2: Sentence of life was excessive.
>
> Ground 3: The trial judge committed fundamental error by failing to instruct the jury on entrapment.
>
> Ground 4: The evidence against Mr. Fields was secured by an illegal search, and therefore it should have been excluded and the charges against Mr. Fields dismissed.

See Dkt. # 1. In response, Respondent asserts that Petitioner's claims are not cognizable in this habeas action, or do not justify habeas relief under 28 U.S.C. § 2254(d). See Dkt. # 10.

*ANALYSIS*

**A. Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c). See Rose v. Lundy, 455 U.S. 509, 510 (1982). The Court finds that Petitioner has fairly presented his habeas claims to the OCCA. Therefore, the exhaustion requirement is satisfied in this case.

The Court also finds that Petitioner is not entitled to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000).

**B. Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As indicated above, Petitioner presented his federal claims challenging his conviction and sentence to the OCCA on direct appeal. The OCCA denied relief. See Dkt. # 10, Ex. 3. Therefore, to the extent the OCCA considered the constitutional grounds identified by Petitioner, the § 2254(d) standard applies to this Court's analysis of Petitioner's claims.

*1. Compelled self-representation (ground 1)*

As his first proposition of error, Petitioner alleges that the trial judge "forsefully [sic] compelled petitioner to proceed pro se if he wanted to pursue his defense and not appointed counsels' defense plan." See Dkt. # 1. On direct appeal, Petitioner raised a claim asserting that he was allowed to represent himself at trial without being warned of the dangers of self-representation. The OCCA rejected the claim, finding as follows:

> [A] defendant's right to counsel is guaranteed by both the federal and state constitutions. U.S. Const. Amend. VI; Okla. Const. art. 2, § 20. That right may be waived if done knowingly and voluntarily, but waiver will not be lightly presumed, and the court must indulge every reasonable presumption against waiver. *Norton v. State*, 2002 OK CR 10, ¶ 7, 43 P.3d 404, 407. "The record must show the trial court advised the defendant of the dangers and disadvantages of self-representation to establish a record sufficient to support a valid waiver of counsel." *Braun v. State*, 1995 OK CR 42, ¶¶ 10-12, 909 P.2d 783, 787. Here, the record clearly shows the trial court thoroughly explained to Appellant the dangers and disadvantages of self-representation. This explanation came after Appellant had previously represented himself at trial and had the conviction reversed by this Court for lack of proper admonishment of his rights. The record is clear Appellant was thoroughly advised of his rights. We find the trial court did not abuse its discretion in finding Appellant knowingly and voluntarily waived his right to counsel. *See Halbert v. State*, 1987 OK CR 57, ¶ 4, 735 P.2d 565, 566.

(Dkt. # 10, Ex. 3).

A defendant enjoys a right to waive his right to counsel "knowing[ly], intelligent[ly], and voluntar[ily]." Maynard v. Boone, 468 F.3d 665, 676 (10th Cir. 2006). "The purpose of the 'knowing and voluntary' inquiry . . . is to determine whether the defendant actually does understand the significance and consequences of a particular decision." Godinez v. Moran, 509 U.S. 389, 401 n.12 (1993). A defendant waiving his right to counsel must be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" Faretta v. California, 422 U.S. 806, 835 (1975) (quoting

Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942)). Trial courts have "the serious and weighty responsibility . . . of determining whether there is an intelligent and competent waiver by the accused." See Maynard, 468 F.3d at 676 (citing Johnson v. Zerbst, 304 U.S. 458, 465 (1938)). To fulfill that responsibility, "a judge must investigate as long and as thoroughly as the circumstances of the case before him demand . . . . The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility." Id. at 677 (citing Von Moltke v. Gillies, 332 U.S. 708, 723-24 (1948)).

The trial court's finding that Petitioner "knowingly and voluntarily" waived his right to counsel is a finding of fact, entitled to a presumption of correctness. See 28 U.S.C. § 2254(e)(1). As stated above, the OCCA found no abuse of discretion by the trial court in so finding. To overcome the presumption of correctness, Petitioner must present clear and convincing evidence demonstrating that his waiver of his right to counsel was not voluntary. Id.; see also Folsom v. Franklin, 234 Fed. Appx. 856 (10th Cir. 2007) (unpublished)[2] (affirming district court's application of § 2254(e)(1) to state courts' finding of fact regarding habeas petitioner's competence to waive voluntarily his right to counsel).

In this habeas action, Petitioner claims that he was forced or compelled to proceed pro se, or essentially that his decision to waive his right to counsel was not voluntary. Specifically, he claims that he "was compelled to self-representation due to [a] 'conflict of interest' and against his will and choice." (Dkt. # 1). He argues that after the trial judge held an in camera hearing with trial counsel "to ascertain [the] nature of the conflict," the "trial judge forsefully [sic] compelled

---

[2]  Citation to unpublished opinions herein is for their persuasive value pursuant to 10th Cir. R. 32.1(A).

petitioner to proceed pro se if he wanted to pursue his defense and not appointed counsels' defense plan." Id.

The record confirms that, on August 22, 2007, the trial court held a status conference to resolve the issue of Petitioner's stated dissatisfaction with his appointed counsel. See Dkt. # 11-4, Trans. Status Hr'g. Petitioner's court-appointed counsel, Marny Hill, requested and was granted an opportunity to explain to the trial judge, outside the presence of Petitioner and the prosecutor, the disagreements she had with Petitioner's defense strategy. See id. at 14-21. After returning to the courtroom, the trial judge noted on the record that during the course of his criminal case, Petitioner had been represented by six (6) different attorneys. Id. at 31. She advised Petitioner that while he had a right to effective representation of counsel, he did not have a right to "attorney shop." Id. She also advised him that he had the right to represent himself. Id. The trial judge insured that Petitioner understood the charge against him, id. at 32, that he understood the plea agreement offered by the state, id. at 32-33, and that he understood the range of punishment he faced if he proceeded to trial, id. at 33. She went on to explain the advantages of having an experienced attorney, like Ms. Hill, represent him during trial, id. at 34-35. She further stated that Ms. Hill had filed motions requested by Petitioner and they had been overruled, and that if Petitioner chose to represent himself and filed the motions again, she would overrule them again. Id. at 36. The trial judge urged Petitioner to keep Ms. Hill as his attorney because she had worked hard for him, and she wished to continue representing him. Id. at 38. She also stated that no one was forcing him to represent himself. Id. The choice he faced was whether he wanted to be represented by an attorney or to proceed with self-representation. Id. at 38-39. Petitioner expressed his concern that Ms. Hill was "scared" of the police officers. Id. at 39. Ms. Hill made a record that she was not afraid of the

8

police officers and that she had not been threatened in any way. Id. at 39-40. Despite those assurances from Ms. Hill and the admonishments by the trial judge, Petitioner decided to proceed with self-representation. Id. at 40. The trial judge specifically found that "he knowingly and has voluntarily made an intelligent decision to represent himself." Id. Ms. Hill agreed to serve as standby counsel. Id.

In support of his claim that he was forced to waive his right to counsel in order to pursue his own defense theory, Petitioner has filed three (3) "supplemental" documents (Dkt. ## 2, 17, 18). In his first "supplemental information" (Dkt. # 2), filed August 26, 2009, Petitioner argues that, during the in camera hearing held August 22, 2007, Ms. Hill incorrectly told the trial judge that information obtained from an investigator, J. Michael Eslick, suggested that witness Earl Carter would testify against Petitioner, and that the description of Mr. Carter's anticipated testimony conflicted with testimony given by Mr. Carter on May 26, 2004. See id. In his second "supplemental filing" (Dkt. # 17), Plaintiff provides a letter from Mr. Eslick, addressed to one of Petitioner's prior attorneys, Jeff Fischer. See Dkt. # 17, attached letter. The letter is dated January 6, 2004, and provides a summary of Mr. Carter's version of the events preceding Petitioner's arrest. Mr. Fischer was Petitioner's attorney at the hearing held May 26, 2004, on Petitioner's motion to suppress. See Dkt. # 12-2, Trans. Mot. Supp. Hr'g. Mr. Fischer would have had access to the letter when he examined Mr. Carter at that hearing. The testimony given by Mr. Carter at that hearing was helpful to Petitioner's defense and was read into the record at Petitioner's second trial after the trial judge declared Mr. Carter to be unavailable. Upon review of the record, the Court finds Petitioner has failed to present clear and convincing evidence to rebut the presumption of correctness afforded the state courts' determination that he voluntarily waived his right to counsel. He has not demonstrated that

9

information concerning Mr. Carter's anticipated testimony, as relayed by defense counsel at the in camera hearing held August 22, 2007, negatively impacted the trial judge's consideration of his motion to subpoena Mr. Carter, or in any way affected Petitioner's defense or otherwise resulted in "coercion" to represent himself.

Petitioner filed his last supplement to the record (Dkt. # 18) on November 15, 2010. The supplemental information is in the form of a letter, addressed to the undersigned. Id. Along with the letter, Petitioner provides, inter alia, a copy of a report, dated January 11, 2008, prepared by a document examiner, offering the opinion that "someone did indeed forge the name of J. Wheeler" on a document pertaining to this case. See Dkt. # 18, Ex. A. To the extent Petitioner provided the supplement to support his claim that he was forced to waive his right to counsel in order to purse his own defense theory, the Court finds it to be insufficient. Prior to trial, Petitioner requested that he be allowed to hire a handwriting expert because he believed the police officers had "forged" parts of their reports. At the in camera hearing, defense counsel advised the trial judge that she told Petitioner it would not be helpful to hire a handwriting expert to examine the "signatures" because the police reports would not be admissible at trial. See Dkt. # 11-4, Trans. Status Hr'g at 18. In open court, the trial judge denied Petitioner's motion for handwriting expert because the police officers themselves could be questioned about the handwriting on their reports.[3] Id. at 27-28. The trial judge

---

[3] The trial transcripts reflect that the police officers were in fact questioned extensively about the preparation of their reports. See Dkt. # 11-7, Tr. Trans. at 447-48, 450, 455, 462, 468. Officer White testified that in preparing Mr. Carter's witness statement, he wrote down what Mr. Carter said and that Officer Wheeler signed the statement as the interviewing officer. Id. at 405-07. He readily admitted that he failed to check the box on the form indicating that he had prepared the statement and characterized the failure as an "oversight." Id. at 406. Officer Wheeler testified that he believed the handwriting on Mr. Carter's statement was Officer White's and that he, Officer Wheeler, had written, not signed, his name at the bottom of the statement. Id. at 455. Officer Wheeler also testified that although they do not "sign"

also advised Petitioner that his request for a handwriting expert was denied because the information sought by Petitioner was not relevant. Id. at 38. Based on the explanation provided to Petitioner by the trial judge, the Court finds that the supplemental evidence now provided by Petitioner is insufficient to overcome the presumption of correctness afforded the state courts' finding that Petitioner's waiver of his right to counsel was voluntary. The record does not demonstrate that Petitioner was forced to waive his right to counsel based on the trial court's refusal to allocate funds to pay for a handwriting expert.

In summary, upon careful review of the record, the Court finds nothing to suggest that the OCCA's finding that Petitioner voluntarily waived his right to counsel under these circumstances fell afoul of AEDPA's "unreasonableness" standard. See generally Maynard, 468 F.3d at 671 (internal quotations and citation omitted) ("[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254.... It is not enough that the decision is clearly wrong or that the reviewing court would have reached a contrary decision.... [T]he state court decision must be at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable."). Furthermore, Petitioner's factual allegations that he was forced to waive his right to counsel do not constitute clear and convincing evidence sufficient to undermine the state courts' contrary factual determination that he voluntarily waived his right to counsel. § 2254(e)(1). Petitioner is not entitled to habeas corpus relief on this claim.

---

documents for other officers, it is common for officers to "list" other officers' names on reports. Id. at 468.

*2. Excessive sentence (ground 2)*

As his second ground of error, Petitioner argues that his life sentence "is shocking and excessive. The sentence also violates the 8th and 14th Amendments to the United States Constitution." (Dkt. # 1). Petitioner raised these claims on direct appeal. The OCCA rejected Petitioner's excessive sentence claim, citing Rea v. State, 34 P.3d 148, 149 (Okla. Crim. App. 2001), and Bartell v. State, 881 P.2d 92, 101 (Okla. Crim. App. 1994), and finding that "Appellant's sentence is not excessive, but appropriate under all the facts and circumstances." (Dkt. # 10, Ex. 3).

Petitioner contends that his sentence of life imprisonment is excessive, in violation of the Eighth Amendment,[4] because the law enforcement officers brought up the issue of drugs, the amount of drugs involved was small, and the plea agreement offered by the State but rejected by Petitioner, reflects the kind of sentence appropriate for the offense charged. However, a sentence violates the Eighth Amendment only if it is "grossly disproportionate to the severity of the crime." Ewing v. California, 538 U.S. 11, 21 (2003) (quoting Rummel v. Estelle, 445 U.S. 263, 271 (1980)). But "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." Lockyer v. Andrade, 538 U.S. 63, 77 (2003). This is not that case. Petitioner's sentence clearly did not exceed the statutory maximum punishment, which was life imprisonment. See Okla.

---

[4] Petitioner also claims that the length of his sentence violates his right to due process of law. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [the] claim[]." Albright v. Oliver, 510 U.S. 266, 273 (1994) (internal quotation marks omitted). Claims of excessive criminal sentences are governed by the Eighth Amendment's prohibition on cruel and unusual punishment. Therefore, the Court rejects any separate due process claim. See Wymer v. Workman, 311 Fed. Appx. 106, 109-10 n.3 (10th Cir. 2009) (unpublished).

12

Stat. tit. 21, § 51.1(B). The length of Petitioner's sentence was due, in large part, to the fact that he had previously been convicted of multiple felonies. The OCCA's decision was not an unreasonable application of the gross disproportionality test. Petitioner is not entitled to habeas corpus relief on this claim.

### 3. *Failure to instruct on entrapment (ground 3)*

As his third ground of error, Petitioner alleges that the trial court committed reversible error in failing to instruct the jury on entrapment. Petitioner states that "[t]he defense of entrapment exists as the law officer's [sic] initiated the alleged criminal activity." See Dkt. # 1. Petitioner raised this claim on direct appeal. The OCCA rejected the claim, finding as follows:

> The evidence was not sufficient to show that Appellant was induced to commit a crime that he would not otherwise have committed. *See Dodd v. State*, 1994 OK CR 51, ¶ 18, 879 P.2d 822, 827; *Cooper v. State*, 1991 OK CR 54, ¶ 4, 810 P.2d 1303, 1305; *Reyes v. State*, 1988 OK CR 50, ¶ 4, 751 P.2d 1081, 1082. At most, the evidence shows the officers provided Appellant with the opportunity to commit a crime, which is not sufficient to establish entrapment.

(Dkt. # 10, Ex. 3).

"As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."). Generally, "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Mathews v. United States, 485 U.S. 58, 63 (1988). An entrapment defense

13

requires a showing of "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." Id. Testimony that "a government agent solicited, requested, or approached the defendant to engage in a criminal conduct, standing alone, is insufficient to constitute inducement." United States v. Nguyen, 413 F.3d 1170, 1179 (10th Cir. 2005). Moreover, the Supreme Court has recognized that "it is very unlikely that [a] defendant will be able to prove entrapment without testifying." Mathews, 485 U.S. at 65 (internal citations omitted).

In this case, Petitioner did not testify, nor did he present any other evidence to suggest that he was an otherwise innocent person who was not predisposed to engaging in this type of criminal activity. Thus, the trial court's failure to issue an entrapment instruction did not deny Petitioner of a fair trial. As a result, the OCCA's adjudication of this claim was not an unreasonable application of Supreme Court precedent, nor did the decision rest on an unreasonable determination of the facts presented at Petitioner's trial. Petitioner is not entitled to habeas corpus relief on this claim.

### 4. *Failure to suppress illegally obtained evidence (ground 4)*

As his fourth proposition of error, Petitioner asserts that his conviction was obtained based on the introduction of evidence obtained from an unconstitutional search. See Dkt. # 1. Petitioner contends, as he did on direct appeal, that the police officers' entry into the motel room exceeded the scope of any implied consent. As a result, he argues that the drug evidence found in the motel room should have been suppressed based on violation of the Fourth Amendment. See id. On direct appeal, the OCCA relied on Gomez v. State, 168 P.3d 1139, 1141-42 (Okla. Crim. App. 2007), and rejected Petitioner's claim that the trial court erred in failing to suppress evidence resulting from an unconstitutional search, finding as follows:

14

> This case does not involve the exercise of governmental authority or invasion of privacy. At the time he invited the first officer into the room, Appellant did not know he was a police officer. Appellant does not complain that he was tricked or deceived into the [sic] inviting the officer into the room. The evidence shows this was a voluntary consensual meeting between a drug dealer and a prospective customer. That the second officer followed the first into the motel room without Appellant's specific invitation (but also without objection from Appellant) does not raise a constitutional violation . . . Accordingly, the entry of the second officer into the room is not grounds for suppressing any evidence subsequently seized from the room.

See Dkt. # 10, Ex. 3.

Supreme Court precedent precludes consideration of this claim. In Stone v. Powell, 428 U.S. 465, 494 (1976), the Supreme Court stated that where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial. The Tenth Circuit has reiterated that a federal habeas corpus court need not address a Fourth Amendment question as long as the state court has given the petitioner a full and fair opportunity for litigation on the issue. Matthews v. Workman, 577 F.3d 1175, 1194 (10th Cir. 2009).

In this case, the record demonstrates that the state courts granted Petitioner a full and fair opportunity to litigate his Fourth Amendment claim based on his allegation that the police officers' entry into the motel room exceeded the scope of his implied consent. On April 16, 2004, prior to his first trial, Petitioner filed a motion to suppress. The trial court denied the motion at the conclusion of a hearing held May 26 and June 1, 2004. See Dkt. # 12-2, Trans. Mot. Hr'g. On February 22, 2005, Petitioner filed a second motion to dismiss. That motion was denied, see Dkt. # 11-1, Trans. Mot. Hr'g at 9, at the conclusion of a hearing held April 15, 2005. On June 25, 2007, prior to his second trial, Petitioner filed another motion to suppress and brief in support. See Dkt. # 12, O.R. at

15

257-60. The trial court held a hearing on the motion to suppress and dismiss. See Dkt. # 11-3, Trans. Mot. Hr'g, dated August 1, 2007. At the conclusion of the hearing, the trial judge denied relief. In addition, as discussed above, Petitioner also raised his Fourth Amendment claim as proposition four on direct appeal. See Dkt. # 10, Ex. 1. The OCCA denied relief. Id., Ex. 3.

Based on that record, the Court finds that Petitioner had a full and fair opportunity to litigate in the state courts his Fourth Amendment claim based on an allegedly unconstitutional search and seizure. As a result, this Court is precluded by the holding of Stone, 428 U.S. at 494, from considering the Fourth Amendment issue raised in Petitioner's petition for a writ of habeas corpus. See also Gamble v. State, 583 F.2d 1161, 1165 (10th Cir. 1978) (opportunity for full and fair litigation in state court under Stone v. Powell includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim). For that reason, the Court concludes that Petitioner's request for habeas relief premised on a violation of the Fourth Amendment shall be denied.

**D. Certificate of appealability**

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of deference to the decision by the Oklahoma Court of Criminal Appeals was debatable amongst jurists of reason. See Dockins v. Hines, 374 F.3d 935 (10th Cir. 2004). The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## *CONCLUSION*

After careful review of the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws or treaties of the United States. His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.
2. A separate Judgment shall be entered in this case.
3. A certificate of appealability is **denied**.
4. The Clerk of Court shall send a copy of this Opinion and Order to the Tenth Circuit Court of Appeals as it relates to Tenth Circuit Case No. 11-5161.

**DATED** this 29th day of December, 2011.

*[signature]*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT